1  M. Greg Mullanax, SBN 155138
   greg@lawmgm.com
2  Law Office of M. Greg Mullanax
   2140 N. Winery Avenue, Suite 101
3  Fresno, CA 93703
   (559) 420-1222
4  (559) 354-0997 fax

5  Attorney for Plaintiff,
   Cristela Maxson

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9  **Cristela Maxson**, an individual,              Case No.

10              Plaintiff,                           **Complaint for Damages for Violation of Civil Rights and Demand for Jury Trial**

11  v.
                                                     1. **42 U.S.C. § 1983, Conspiracy**
12  **Santa Clara County Sheriff's Office**, a       2. **42 U.S.C. § 1983, Failure to Investigate**
    government entity,                               3. **42 U.S.C. § 1983, Supervisor Liability**
13  **Richard M. Alanis**, an individual employed by  4. **42 U.S.C. § 1983, *Monell* Liability**
    SCCSD,                                           5. **42 U.S.C. § 1983, Malicious**
14  **Daniel Rodriguez**, an individual employed by     **Prosecution**
    SCCSD,                                           6. **42 U.S.C. § 1983, Supervisor Liability**
15  **Ken Binder**, an individual employed by SCCSD,  7. **42 U.S.C. § 1983, *Monell* Liability**
    **Carl Neusel**, an individual employed by SCCSD,  8. **42 U.S.C. § 1983, False**
16  **Laurie Smith**, Sheriff of Santa Clara County,    **Imprisonment/False Arrest**
    and **DOES 1 through 20**, inclusive,

17

18              Defendants.

19
                              **INTRODUCTION**
20

21       1.     This is a 42 U.S.C. § 1983 civil rights action brought by plaintiff Cristela Maxson

22  ("Cris") to seek relief for defendants' violations of her right to be free from unlawful arrest and malicious

23  prosecution under the Fourth and Fourteenth Amendments of the United States Constitution.

24                              **PARTIES**

25       2.     Plaintiff, Cristela Maxson, is an individual who is a citizen of Texas.

26       3.     Defendant, Richard M. Alanis, is a Sergeant with the Santa Clara County Sheriff's

27  Department, ID number 1781, and is a citizen of the State of California. Defendant Alanis was the primary

28  investigator of plaintiff's case.

4. Defendant, Daniel Rodriguez, is the Captain of Investigative Services of the Santa Clara County Sheriff's Department, with ID number 1659, and is a citizen of the State of California. Defendant Rodriguez was Alanis' supervisor who reviewed and approved of Alanis' investigation reports and Alanis' request for an arrest warrant an extradition of plaintiff.

5. Defendant, Ken Binder, is the Assistant Sheriff of Enforcement of the Santa Clara County Sheriff's Department, ID number unknown, and is a citizen of the State of California.

6. Defendant, Carl Neusel, is the Undersheriff of the Santa Clara County Sheriff's Department, ID number unknown, and is a citizen of the State of California.

7. Defendant, Laurie Smith, is the Santa Clara County Sheriff, and is a citizen of the State of California. Defendant Smith was at all material times the Sheriff of Santa Clara County and the legal head and policymaker for the SCCSD during which the incidents complained of herein occurred resulting in the deprivation of plaintiff's constitutional rights.

8. Defendant, Santa Clara County Sheriff's Office, is a governmental organization in Santa Clara County, California charged with and responsible for appointing and promoting the employees of the Sheriff's Department, and for the supervision, training, instruction, discipline, control and conduct of said employees. At all times alleged herein defendant Sheriff's Department had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States and the laws of the State of California.

9. At all times alleged herein, defendant Sheriff's Department had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, and the laws of the State of California.

10. Unknown defendants are employees of the Santa Clara County Sheriff's Department ("SCCSD" or "Sheriff's Department") who may be policymakers, supervisors or persons responsible for training and discipline, investigations and records.

11.     The unknown named defendants "Doe" defendants include, but are not limited to, unknown named Sergeants, Lieutenants and Captains who acquiesced in the false arrest and malicious prosecution of plaintiff as is described below, and unknown named employees of the Sheriff's Department who were policymakers who created, fostered, acquiesced, ratified and or maintained the policies, customs and/or practices that caused the deprivation of plaintiff's constitutional rights.

12.     Plaintiff is ignorant of the true names and capacities of those defendants named as unknown defendants or "Does" and will amend this complaint to allege the true names and capacities of said defendants when they become known.

13.     Each and every defendant who is a natural person is sued in both his or her individual personal capacity, as well as in his or her official capacity if he or she had any policymaking duties, functions, or responsibilities with respect to the matters alleged herein.

### General Allegations

14.     Each of the defendants was the agent and/or employee and/or co-conspirator of each of the remaining defendants, and in doing the things alleged herein, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other codefendants.

15.     Each paragraph of this complaint is expressly incorporated into each claim for relief which is a part of this complaint.

16.     The acts and omissions of all defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of plaintiff and with knowledge that the conduct violated well and clearly established and settled law.

17.     The terms "policymaker" and "supervisorial" as applied to defendants herein includes persons and/or entities who are not alleged to have been physically at the scene of the actual incidents and succeeding events set forth in this complaint.

### Jurisdiction

18.     This action arises under 42 U.S.C. § 1983. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and § 1343.

### Venue

19.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of

the events or omissions giving rise to this claim occurred in this district. The unlawful acts and practices alleged herein occurred in Santa Clara County, California, which is within this judicial district.

## FACTS

20.   During all relevant times herein, plaintiff, Cris Maxson, was a middle-aged woman residing in Tarrant County, Texas. Cris was single and worked two jobs to make ends meet. She was not originally from Texas, but moved to Texas to be near her sister who lived in Fort Worth. Cris did not have a high school diploma and she was very unsophisticated with computers. In fact, she did not even own a computer, but she had a cell phone which she used to access her email and her Facebook account. In or around January 2015, Cris met a man online claiming to be named Owen Boyer. Mr. Boyer claimed he was in the United States military and was deployed in that capacity overseas. Cris and Boyer corresponded back and forth by email and through Facebook. Boyer created a fake Facebook account and posted photos of another man in U.S. Military garb to fool those who saw his Facebook page into thinking they were photos of Boyer when they were not. But when Cris met Boyer online, she had no idea the person with whom she was communicating and with whom she was developing a relationship was not really Owen Boyer and he was not in the U.S. military.

21.   All throughout their internet communications, Boyer lied to Cris. He told her, among other things, that his parents were dead and his sister was killed in an accident. Boyer also shared that he was lonely and single. Cristela, too, was lonely and single and she shared this with Boyer.

22.   Over time, Cris fell in love with Boyer and Boyer claimed he was in love with Cris. In approximately February 2015, Boyer asked Cris to become his fiancé and marry him. Cris happily agreed. Cris was so excited that she shared the news with her sister and her friends. She wrote in her diary about how excited she was over the impending wedding and she even wrote about her plans for the wedding in her diary.

23.   But this was all a ruse—Boyer, whose real identity is still unknown—was grooming Cris for his own criminal enterprise. Boyer continued his deceptions and told Cris that his deceased parents owned a home in the United States that was rented to tenants. Boyer told Cris that he needed help collecting the rent. Boyer asked if he could have the rent money sent to Cris, and when she received the rent checks, he asked if Cris would cash the checks and then wire the money to him overseas.

24. Cris was more than happy to help Boyer with his "problem collecting rent." Boyer also told Cris that others owed him money and asked if she would do the same thing by collecting the checks when they arrived in the mail, cashing them and then wiring the money to him overseas. Anxious to help her future husband, Cris readily agreed. At no time did Cris ever suspect or know that Boyer was using her as an unwitting participant in his criminal racket.

25. Once, Boyer even complained about his food and told Cris he didn't have money to buy decent food. Boyer asked Cris to wire some of her own money to him, which Cris did. And Cris did not really have much money of her own. She was living paycheck-to-paycheck working at a 7-11 convenience store and at a Walmart. But Cris, concerned about her fiancé's well-being, wired $220 to Boyer and later sent Boyer another $100 and later even more of her hard-earned money.

26. In July 2015, Boyer told Cris she would start receiving some checks for rent on Boyer's parents' house. Cris did receive the checks. As instructed by her "fiancé," Cris took the checks to her bank and cashed them. She then went across the parking lot to Walmart where she took the cash and wired the money to Boyer who said he was in Nigeria.

27. Once Cris had done this for a while, Boyer stopped communicating as much with Cris. She got worried and mad. But Boyer came around and as a part of his scheme, he started communicating again with Cris, reaffirming his love and asking her for more favors.

28. Then, on October 27, 2015, Cris' sister, Jesusita Mayfield ("Jesse"), received in the mail a warrant for Cris' arrest. The arrest warrant was issued by the Santa Clara County Superior Court on October 9, 2015. Jesse was shocked and immediately called Cris and told her about the warrant. Cris was surprised and confused because she had never been to California and had no idea what the warrant was for. Cris never suspected or even thought that this arrest warrant had any connection whatsoever to her relationship with Boyer. The subject of California never came up in their relationship.

29. The face of the arrest warrant said, "FINGERPRINTS NEEDED." The warrant also said, "A MISDEMEANOR HAS BEEN COMMITTED, AND ACCUSING CRISTELA MAXSON..." The arrest warrant further stated. "THAT THE OFFENSE OF: (M) PC487F and (M)PC484/487(A)."

30. California Penal Code § 487F states, "Every person who feloniously steals, takes, or carries away a dog of another which is of a value not exceeding nine hundred fifty dollars ($950) is guilty

of petty theft."

31.      California Penal Code § 484 is Larceny and Penal Code § 487(a) says that when the money taken exceeds nine-hundred fifty dollars ($950) it is felony grand theft.

32.      Jesse and Cris immediately called the Santa Clara County Sheriff's Department believing that someone must have stolen Cris' identity. They looked up the phone number and called (408) 808-4400. When Jesse and Cris called that number, no one at the Sheriff's Department would help them. They got nowhere except to find out that Penal Code § 487F is dog theft and Penal Code §§ 484/487(a) is essentially larceny and grand theft.

33.      Not knowing what else to do, on October 29, 2015, Jesse and Cris went to the Fort Worth Police Department headquarters in Fort Worth, Tarrant County, Texas. They presented the warrant to the Fort Worth police, who checked on the warrant. Cris and Jesse told the FWPD Cris had never been to California, never stolen a dog in California, or stolen money in California. Cris and Jesse explained their confusion. At this point, Cris was scared and frightened because she had no idea what was going on.

34.      A FWPD officer told Jesse and Cris the FWPD could not verify the warrant.  The officer did offer to take Cris' fingerprints so Cris could send them to the Santa Clara County Sheriff.  The FWPD took Cris' fingerprints and gave Cris the fingerprint card. Cris then made a copy of her government-issued State of Texas identification card (Cris did not have a driver's license) and as the FWPD officer suggested, they sent the information along with a letter with Cris' contact information to the address on the back of the warrant. The address was: Santa Clara County Office of the Sheriff, 55 W. Younger Avenue, San Jose, CA 95110.The Sheriff received this information packet on November 3, 2015.

35.      Even after going through all of this trouble—the phone calls, the visits to the local police and the mailing of her fingerprints and official Texas Identification card to the defendant Sheriff's Department, no one there would talk to Cris about her case or even explain to her what was going on. Apparently, no one in the Sheriff's Records Department bothered to contact defendant Alanis or anyone else in the Department about a "fugitive" under a Governor's Warrant, who is voluntarily calling the Sheriff and providing crucial identifying information, including fingerprints! So here we have the astonishing situation where an out-of-state "fugitive" begs for contact with the very Sheriff's Department that requested the arrest warrant and extradition, but never even bothers to respond to the fugitive's

1   pleas.

2       36.    Still in the dark about the warrant, **Cris was arrested on December 17, 2015** in Fort

3   Worth, Texas and was booked into the Tarrant County Jail based on the Santa Clara County arrest

4   warrant. Cris did not have money for bail, which was set at $150,000.00. Cris spent Christmas in jail

5   without knowing why. Cris was scared and confused and humiliated.

6       37.    In the meantime, Jesse was frantically trying to find out what was going on. She was still

7   getting no information from the Santa Clara County Sheriff's Department. No police officer or detective

8   ever came to see Cristela while she was in jail to ask her about the charges. No one from the Santa Clara

9   County Sheriff's Department ever contacted Cristela or Jesse before or after her arrest to ask anything.

10   No one from the Santa Clara County Sheriff's Department called the Fort Worth Police Department, the

11   Tarrant County Sheriff's Department or the Texas Rangers for assistance with their investigation, even

12   after they had their quarry caged in a Fort Worth jail for two months including the Christmas holidays.

13       38.    While Cris was in jail with no hope of raising the exorbitant $150,000 bail, Jesse and her

14   family were desperate to help Cris.  After investigating the issue of grand theft, Jesse finally figured it must

15   have something to do with Boyer. Jesse visited Cris in jail and asked her about everything. Jesse became

16   suspicious of Boyer after finding out that Cris had wired money to him. Jesse accessed Cris' Facebook and

17   email accounts and determined that Boyer scammed Cris and that Boyer was a fake.

18       39.    Jesse finally resorted to going to the media. She contacted reporter Rebecca Lopez at

19   WFAA-TV, Dallas' local ABC affiliate. Lopez interviewed Jesse and interviewed Cris in jail. Lopez

20   contacted the Santa Clara County Sheriff's Office and she got nowhere other than to be informed that a

21   Governor's Warrant for extradition had been issued. In January 2016, Lopez aired a report about Cris'

22   plight documenting "military romance scams" and even contacted the Marine whose identity was stolen

23   by "Boyer." Lopez' report stated the Marine "had no idea" his identity had been stolen and was being

24   used by "Boyer."

25       40.    At this point, WFAA reporter Rebecca Lopez and the millions of WFAA viewers in

26   Dallas and Fort Worth knew more about Cris' case than any of the defendants who "investigated" the

27   matter. Despite media inquiries and Cris' and Jesse's multiple inquiries, the Santa Clara County Sheriff's

28   Department continued to ignore the matter and insisted on extraditing Cris to California.

41.     Cristela spent two long, agonizing months in the Tarrant County, Texas jail. The Sheriff's Department extradited Cris to Santa Clara County, California on February 18, 2016. Before the flight from DFW Airport to California, Cris suffered the indignity of being escorted by two law enforcement officers through the airport while handcuffed and restrained like a common criminal. Upon arriving in San Jose (Cris thinks it was San Jose but she wasn't sure and was not familiar with the Bay Area because this was her first time in California) she was promptly taken to jail.

42.     It wasn't until her initial appearance in the Superior Court in Morgan Hill, California on February 19, 2016 did Cris finally learn for certain why she had been arrested. Cris was charged with two counts of felony grand theft. The District Attorney's office provided its discovery to Cris' defense counsel which included investigative reports. These investigative reports told the story behind the story.

43.     According to defendant Hakeem Lee's (ID number 2187) investigative report, a woman in Gilroy ("Victim") had been duped by an online conman concerning a house rental in Colorado. Apparently, Victim responded to a fake Craigslist ad and sent the purported landlord checks for first month's rent and a security deposit.

44.     It turns out, the person who placed the Craigslist ad was none other than the purported Owen Boyer—Cristela's fiancé. But then, Cris had no idea that the purported Boyer was scamming her, much less prospective renters in California on Craigslist.

45.     After defendant Deputy Lee took the initial report, defendant, Deputy Richard M. Alanis, ID number 1781, took over the case. He discovered that Victim had indeed been scammed out of her money and he determined that Cris eventually received the checks and cashed them. The purported landlord, Boyer, told Victim to send her checks to his "attorney," Cris Maxson in Fort Worth. Defendant Alanis obtained photos of Cris cashing the checks in a Fort Worth-area bank. Defendant Alanis found Cris' Facebook page. He compared the photos from the bank and Cris' Facebook account and concluded that it was Cris who was the perpetrator here, and he concluded his investigation without ever even contacting Cris. Of course, in the report Alanis claims he tried to call Cris but was unable to reach her. This is hopefully one of those rare and unheard of moments a law enforcement investigator closes an investigation because of his inability to speak to the suspect by phone.

46.     Defendant Alanis knew Cris' address, because she received Victim's checks, but he never

even asked the Fort Worth Police or the Tarrant County Sheriff's Department or the Texas Rangers for

assistance in investigating this crime. In fact, the information defendant Alanis found should have raised

more questions than answers. Why would someone smart enough to place a fake and convincing ad on

Craigslist be so stupid as to have a check mailed to her own home and then cash the check herself at the

bank?

47.     Cris wired the money she received to "Boyer" in Nigeria. Most investigators of internet

crimes are very aware of the Nigerian online scams. Most investigators are also very aware of online dating

romance scams and military romance scams because these scams involve the appropriation of another's

identity to conceal the perpetrator's real identity to dupe potential victims.

48.     In fact, the Santa Clara County District Attorney's Office has online a document entitled,

"ON-LINE RENTAL SCAM ALERT".[1] It warns readers of a "Nigerian Rental Scam" where a Nigerian

scammer looks for homes for sale on online websites. The alert says:

> Criminals search websites that list homes for sale. They take the
> information in those ads and post it, with their own email address,
> on an on-line site (without consent or knowledge of the site) under
> the housing rentals category. To sweeten the pot, the houses are
> almost always listed with below-market rental rates. An interested
> party will contact the "homeowner" via e-mail, who usually
> explains that he or she had to leave the U.S. quickly because of
> some missionary or contract work in Africa. Victims are usually
> instructed to send money overseas—enough to cover the first and
> last month's rent—via a wire transfer service (because the crooks
> know it can't be traced once it gets picked up on the other end).

> **In the "modified Nigerian Rental Scam":**

> The fraudulent ad is created in Nigeria, and then given to a person
> here in the United States. This person is a money mule for the
> crooks in Nigeria. The mule will email or even chat with the
> prospective renter on the phone, and provide a local bank account,
> for the prospective tenant to deposit the rent. The mule then keeps
> part of the money, and forwards the rest to the Nigerian crook.

49.     That's similar to what happened here, except Cris was not part of the scheme, so it's

perhaps a modified-modified Nigerian Rental Scam. Boyer communicated with Victim, not Cris. In fact,

Cris knew nothing about victim other than what she learned from Boyer—that Victim was a tenant and

---

[1]

https://www.sccgov.org/sites/da/newsroom/newsreleases/Documents/PSA%20Rental%20Scam%20Alert%20final%20pdf.pdf

1   Cris was only helping Boyer by cashing the checks and wiring the money to Boyer in Nigeria. So, while

2   Cris may have been a money mule, she was an unwitting money mule and certainly had no intent to

3   permanently deprive Victim of her money.

4          50.      But these concerns did not prompt defendant Alanis and his superiors at the Sheriff's

5   Department to continue the investigation despite the direction from the District Attorney's notice.

6   Instead, Alanis concluded his investigation claiming that Cris "fraudulently conspired with an unknown

7   male suspect" to defraud Victim despite having no evidence of Cris having any intent to deprive Victim of

8   her money. Defendant Alanis did not look for the "unknown male suspect." Had he bothered to contact

9   Cris, he would have learned the whole story and perhaps, Alanis, if so inclined, would have continued his

10  investigation to find the "unknown male suspect" and get to the bottom of it. Defendant Alanis'

11  recommendation and report was approved by defendant Deputy Daniel Rodriguez, ID number 1659, who

12  was also apparently unconcerned about the red flags in this case and the lack of evidence of intent to steal

13  and which demonstrates the Sheriff Department's policy of closing files the easy way—by picking the low-

14  hanging fruit.

15         51.      On January 28, 2016, Cris' California defense counsel called Supervising Deputy District

16  Attorney Stephen Lowney at the Santa Clara County District Attorney's Office in Morgan Hill,

17  California. Lowney told Cris' counsel that he could nothing on the case until Maxson appeared in court at

18  which time her case would be assigned. Counsel told Lowney that Cris was a victim herself of an internet

19  fraud. Lowney replied by saying, "All I know is I have video of your client cashing the checks."  Counsel

20  urged Lowney to look at the information counsel was willing to provide, but Lowney refused stating that

21  information could be provided after Cris' court appearance. Lowney also told counsel it was likely Cris

22  would be extradited to California in the next day or two. After the phone conversation, counsel sent

23  Lowney a letter informing him of counsel's representation of Cris.

24         52.      On February 12, 2016, Cris' California defense counsel contacted the SCCSD's Fugitive

25  Warrant Division to resolve the matter. Counsel was informed by the unnamed deputy that the case had

26  been transferred to the Santa Clara County District Attorney's Office and therefore he could do nothing.

27  The deputy told counsel that Cris would be extradited but refused to say when extradition would occur

28  due to "security reasons."

Case 5:17-cv-01293-EJD Document 1 Filed 03/10/17 Page 11 of 25

53.     On February 19, 2016, on her first and only trip to California, Cris made her first appearance in Superior Court in Morgan Hill, Docket Number F1557176. On March 4, 2016, Cris was arraigned and pleaded not guilty. Cris' defense counsel provided discovery to the District Attorney which proved Cris was an innocent victim—the same information that would have been given to defendants Alanis or Rodriguez or anyone from the Sheriff's Department if they had only returned Cris' phone calls or responded to her letter or sent a Texas law enforcement officer to speak with Cris in jail. These are the same facts reported on by Rebecca Lopez but not uncovered by the professional investigators in the Santa Clara County Sheriff's Department.

54.     On the morning of the scheduled preliminary hearing, March 14, 2016, the Santa Clara County District Attorney's Office dismissed the complaint for lack of evidence prior to the hearing, and Cris was released from jail late that night. She was essentially kicked to the curb around 11:00 p.m. in a city and state she had never visited before.

55.     Defendants knew or should have known that there was no probable cause to arrest and charge Cris with any crime. Defendants should have responded to Cris' correspondence to the SCCSD. Sheriff employees who spoke with Cris and Jesse on the phone and who received Cris' fingerprints and correspondence should have notified defendants Alanis and Rodriguez and perhaps others in the Department but did not, of if the employee did report this information, defendants Alanis and Rodriguez ignored the information and conspired to hide this information and proceeded to have Cris arrested and extradited despite not having probable cause for Cris' arrest.

56.     The defendants persisted in prosecuting Cris in an effort to cover-up the false arrest and malicious prosecution which likely included concealment and suppression of exculpatory evidence and lack of investigation despite having exculpatory information sent to them by Cris over one month before her arrest.

57.     The defendants met alone with each other, and, possibly, with other unknown named defendants, and combined, conversed, and planned amongst themselves and agreed, with knowledge that plaintiff was deprived of her constitutional rights, to participate in the continued perpetration of the actions that resulted in the deprivation of plaintiff's constitutional rights, including, but not limited to agreeing to cease investigating the case even after plaintiff contacted them, to fabricate probable cause, to

Cristela Maxson's Complaint & Demand for Jury Trial, page 11

1   suppress exculpatory evidence, to refuse to follow up with plaintiff's contacts with the Sheriff's

2   Department, and to present a lackluster investigation having as their sole goal the conviction, punishment

3   and imprisonment of plaintiff. Additionally, there was the commission of an overt act in furtherance of the

4   conspiracy or conspiracies, the suppression of exculpatory evidence and or the refusal to follow up on the

5   investigation and with plaintiff related to the underlying facts of the case which would have revealed what

6   should have been obvious exculpatory evidence.

7         58.    The illegal seizure and malicious prosecution of plaintiff occurred, at least in part,

8   because the Sheriff's Department and its policymakers had condoned, acquiesced in, or was deliberately

9   indifferent to the existence of a policy, implicit policy, practice or custom of unlawful seizure and

10  malicious prosecution to cover up incompetent investigations, illegal seizure, maintaining the code of

11  silence in the context of crimes committed in enforcing their own code of silence within the Sheriff's

12  Department, and by failing to train Sheriff's deputies in the correct and lawful methods of investigation

13  and seizure. The Sheriff's Department maintained and/or maintains a custom, policy or practice, and/or

14  tacitly approved a custom, policy or practice of acquiescing in, encouraging, fostering, being deliberately

15  indifferent to, allowing, permitting and recklessly and/or intentionally engaging in illegal seizure, arrest

16  without probable cause, malicious prosecution, and concealment and suppression of exculpatory evidence.

17        59.    All supervisorial liability defendants, including but not limited to Smith, set in motion a

18  series of events that led to the unlawful arrest, incarceration and prosecution of plaintiff, and, specifically,

19  defendants Alanis, Rodriguez, and specifically defendant Smith the Sheriff and overall supervisor of

20  Rodriguez and the other supervisors specifically ratified the actual conduct of defendant Alanis that is the

21  subject of this action by specifically approving the decisions made by Alanis and thereafter leading up to

22  the arrest and incarceration and prosecution of plaintiff, specifically approving of the bases for those

23  decisions, and ratifying and approving the decisions and basis for the decisions of Alanis and Rodriguez

24  and others by means of the product of a conscious, affirmative choice to ratify the decisions and conduct

25  of Rodriguez, Alanis and others, resulting in the false arrest, the incarceration and malicious prosecution

26  of plaintiff, and these conscious decisions on the part of defendant Smith and her subordinate supervisors

27  and policymakers within the Sheriff's Department have resulted in similar incidents involving other

28  innocent persons.

60.     The Sheriff's Department and/or Sheriff Smith, defendants Rodriguez, Binder and Neusel and perhaps others, and each of them or any combination of them were on actual or constructive notice that the SCCSD's training program/regiment contained lacunae and deficiencies that caused SCCSD's investigators to conduct themselves in a manner that deprived people of their constitutional rights under the fourth and fourteenth amendments to freedom from unreasonable search and seizure under the circumstances presented in this case, i.e., by being falsely identified and accused of being a dog thief and an internet scam artist, which clearly indicates that the SCCSD's investigators are deficiently trained in internet and/or computer crimes, yet despite this, these defendants chose in the face of this knowledge to retain their deficient training programs. The SCCSD's jurisdiction covers Silicon Valley, where companies such as Apple, Google and others are located, yet the SCCSD still willfully maintains a policy of continuing deficient training of internet and computer crime investigations for its investigators.

61.     Thus, the defendants' policy of inaction to the deficiencies of the SCCSD's training program constituted a decision on the part of the SCCSD and Sheriff Smith to violate the constitution.

62.     Specifically, the Sheriff's Department training program is deficient in its failure to train its investigators on how to identify suspects who commit crimes via the internet, how to conduct computer forensic examinations of the internet and of computers to identify internet perpetrators, how to interview witnesses to isolate critical details of an internet crime in order to eliminate as suspects persons who are innocent and how to analyze Facebook and other internet application data in order to geographically locate suspects during a specific timeframe.

63.     Plaintiff alleges that these failures are the results of deliberate indifference on the part of defendant Sheriff's Department, Sheriff Smith and others by and through their decision-makers and subordinates.

64.     The foregoing unconstitutional failures to train were a direct and legal cause of harm to plaintiff.

65.     Defendants Sheriff's Department implemented a de facto policy, custom or practice or a hybrid of policy, custom and/or practice or any combination thereof of fostering Sheriff's Department response to internet crimes by engaging in ruses and deception when interviewing persons of interest in an effort to quickly close a file and make a quick arrest in order to close a file instead of uncovering

exculpatory information that would eliminate persons of interest as the suspect, ignoring clues and evidence that point to the innocence of a person who has been arrested, ignoring the suspect's pleas to provide information, failing to obtain and properly review computer information seized from persons, failing to understand internet technology such as Facebook and thus failing to use such technology properly in the investigation of the crimes, realizing that an innocent person may have been arrested and then attempting to cover up mistakes by encouraging and facilitating the malicious prosecution of such persons by the district attorney in order to launder mistakes made by the SCCSD and providing false and/or incomplete information to the district attorney in the course of prosecutions in order to cause the district attorney to institute prosecutions and continue to prosecute innocent persons.

66.     The foregoing unconstitutional failures to train were a direct and legal cause of harm to plaintiff.

67.     Defendant Sheriff's Department's failure to train, as described herein, were within the control of the defendant Sheriff's Department and within the feasibility of defendant Sheriff's Department to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by plaintiff.

68.     As a result of the defendant's conduct, which was perpetrated intentionally, recklessly, wantonly, fraudulently, oppressively, and/or with reckless disregard for the truth and the rights of plaintiff and others, and which is so despicable that it is despised by ordinary people, plaintiff suffered all of the damages mentioned herein, including humiliation, fear, feelings of degradation and helplessness, sleeplessness, anguish, despair, fright, severe mental and emotional distress, depression, distrust, and embarrassment in violation of her federal constitutional rights and her rights under the laws of the State of California and plaintiff is entitled to punitive damages.

69.     All defendants acted without authorization of law.

70.     Each defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each defendant ratified, approved and acquiesced in the violations alleged herein.

71.     As joint actors with joint obligations, each defendant was and is responsible for the failures and omissions of the other.

72.     Each defendant acted individually and in concert with the other defendants and others not named in violating plaintiff's rights.

73.     Each defendant acted with a deliberate indifference to or reckless disregard for an accused's rights for the truth in withholding evidence from prosecutors and/or supplying incomplete evidence, for an investigation free of active concealment of material facts, for a thorough investigation, for a lack of response to plaintiff's pleas to provide information and assist investigators and or for the plaintiff's right to due process of law.

74.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the defendants, plaintiff has suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which has caused plaintiff to sustain damages in a sum to be determined at trial.

75.     Due to the acts of defendants, plaintiff has suffered, and continues to suffer, and is likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, plaintiff will incur significant damages based on psychological and medical care.

76.     As a further result of the conduct of each of these defendants, plaintiff has lost past and future earnings in an amount to be determined according to proof at trial.

77.     The aforementioned acts of the defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the plaintiff, entitling plaintiff to exemplary and punitive damages from each defendant other than defendant Sheriff's Department, in an amount to be proven at the trial of this matter.

78.     By reason of the above described acts and omissions of defendants, plaintiff was required to retain an attorney to institute and prosecute the within action, and to render legal assistance to plaintiff that she might vindicate the loss and impairment of her rights, and by reason thereof, plaintiff requests payment by defendants of a reasonable sum for attorney's fees under 42 U.S.C. § 1988.

### COUNT 1 – 42 U.S.C. § 1983
### DEPRIVATION OF CONSTITUTIONAL RIGHTS – 4TH & 14TH AMENDMENTS - CONSPIRACY
### ALL INDIVIDUAL DEFENDANTS EXCEPT SMITH

79.     Plaintiff re-alleges and incorporates herein the foregoing paragraphs as well as any subsequent paragraphs in the complaint as if fully set forth herein.

80.     At the time of the incidents alleged herein, the rights of persons within the jurisdiction of the United States of America under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws under Amendment IV to be free from unreasonable searches and seizures, were in force and effect and the individual defendants who engaged in conduct, as set forth herein, who met, combined, conferred and formed an agreement amongst themselves to subject plaintiff to unlawful seizure and who recklessly and with conscious disregard for plaintiff's rights failed to properly investigate the case thus supplying incomplete information is support of a request for an arrest warrant simply to close a file and who ignored plaintiff's pleas for help and her offer of evidence over a month before her arrest, deprived plaintiff of her constitutional rights, which violated those rights, violated the fourteenth amendment to the United States Constitution and did conspire to deprive plaintiff of her rights and to cover-up the aforesaid constitutional deprivations which proximately caused the severe and permanent injuries of plaintiff by suppressing and/or ignoring exculpatory evidence, by agreeing to maintain a code of silence about the investigation to obfuscate the truth and hinder the discovery of the truth surrounding the illegal arrest of plaintiff and the illegal prosecution of plaintiff.

## Count 2 – 42 U.S.C. § 1983
### Deprivation of Constitutional Rights, 4th & 14th Amendments
### All Individual Defendants Except Smith

81.     Plaintiff re-alleges and incorporates herein the foregoing paragraphs as well as any subsequent paragraphs in the complaint as if fully set forth herein.

82.     At the time of the incidents set forth herein, the rights of persons within the jurisdiction of the United States of America under both the Amendments V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable searches and seizures were in force and effect and the individual defendants who engaged in conduct that set forth above, who failed to properly investigate plaintiff's case and ignored plaintiff's plea for information and offers of information, suppressed and/or ignored exculpatory evidence, seized and subjected plaintiff to illegal search and seizure deprived plaintiff of her constitutional rights, which violated those rights, violated the 14th amendment to the United States Constitution.

### Count 3 – 42 U.S.C. § 1983
### Deprivation of Constitutional Rights, 4th and 14th Amendments
### All SCCSD Supervisorial Defendants including Smith

83.     At the time of the incidents set forth herein, the rights of persons within the jurisdiction

of the United States of America under both the Amendments V and XIV to the United States

Constitution to due process of law and the equal protection of the laws and under Amendment IV to be

free from unreasonable searches and seizures were in force and effect and the individual defendants who

engaged in conduct, as set forth above, who seized and subjected plaintiff to illegal seizure deprived

plaintiff of her constitutional rights, which violated those rights, violated the fourteenth amendment to the

United States Constitution and did conspire to deprive plaintiff of her rights and to cover-up these

constitutional deprivations which proximately caused the severe and permanent injuries to plaintiff by

failing to properly investigate the case, by suppressing, ignoring and/or concealing exculpatory evidence,

by agreeing to a code of silence about the investigation to obfuscate the truth and hinder discovery of the

truth surrounding the illegal arrest and extradition and the illegal prosecution of plaintiff by agreeing to

confuse, cloud and suppress facts, ignoring offers of information from plaintiff and her counsel pertaining

to her arrest warrant in order to cover-up plaintiff's constitutional rights.

### Count 4 – 42 U.S.C. § 1983, *Monell* Liability
### Deprivation of Constitutional Rights. 4th & 14th Amendments
### SCCSD

84.     At the time of the incidents set forth above, the rights of persons within the jurisdiction of

the United States of America under both Amendments IV and V to the United States Constitution to due

process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable

searches and seizures were in force and effect and the individual defendants who engaged in conduct, as

set forth above, who seized and subjected plaintiff to illegal seizure and deprived plaintiff of her

constitutional rights, which violated those rights, violated the 14th amendment to the United States

Constitution.

85.     Defendant Sheriff's Department by and through its agent Sheriff Smith, who had final

policymaker authority and who had authority on behalf of the Sheriff's Department to delegate such

authority, delegated final policymaking authority to DOE defendants for the investigation of internet

related fraud schemes such as Nigerian rental scams and military romance scams and including the

1   investigation involving plaintiff.

2          86.     This cause of action arises under 42 U.S.C. § 1983, where plaintiff seeks to redress a

3   deprivation under color of law of the right, privilege or immunity secured to her, respectively, by the

4   Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

5          87.     Defendants violated plaintiff's constitutional rights by creating and maintaining, among

6   other things, the following unconstitutional customs and practices: Defendant Sheriff's Department

7   implemented a de facto policy, custom or practice or a hybrid of policy, custom and/or practice in cases

8   involving internet fraud schemes, of arresting persons without probable cause and maliciously prosecuting

9   persons by failing to obtain the expertise in social media software and systems necessary to identify

10  computers that connect to social media sites, including chat rooms, failing to obtain the expertise in social

11  media software and systems necessary to identify persons who connect to social media sites, including

12  chat rooms, ignoring and suppressing exculpatory evidence, failing to investigate multiple suspects, failing

13  to investigate leads pointing to suspects, failing to obtain the expertise in computer science necessary to a

14  basic understanding of how computers connected to the internet, failing to obtain and preserve digital

15  evidence, such as evidence from computers including smart phones, tablets and laptop computers and

16  servers, that carry digital fingerprints of and identify the actual perpetrators of the crimes reported, and

17  ignoring plaintiff's and her counsel's pleas to provide information.

18         88.     In this case it was Santa Clara's County Sheriff's Department's de facto policy, custom or

19  practice or a hybrid of a policy, custom and/or practice that because defendants Alanis and others to fail to

20  investigate suspects other than plaintiff, failed to understand how computers connected to the social

21  media websites that were at issue, failed to understand how suspects connected to the social media

22  websites that were at issue, failed to verify whether the "unknown suspect" had multiple Facebook

23  accounts, and failed to obtain and preserve digital evidence that identified actual perpetrators of the

24  crimes reported.

25         89.     Defendant Sheriff Department's policies and/or customs caused and were the moving

26  force or affirmative link behind some or all of the violations of plaintiff's constitutional rights at issue in

27  this case.

28         90.     Defendant Sheriff's Department maintains a custom, policy and/or practice or a hybrid of

a policy, custom and/or practice or any combination thereof of not properly supervising and/or

disciplining their respective employees, officers, managers and supervisors for failing to observe and act in

compliance with the legal requirements and protections applicable to persons as set forth in the United

States and California constitutions, and other laws as set forth in this complaint, including but not limited

to 42 USC § 1983, in the Fifth, Fourth and Fourteenth Amendments to the United States Constitution.

This policy, custom, practice or hybrid manifests itself in a chronic failure on the part of the Sheriff's

Department to thoroughly investigate leads, to follow-up with suspects after the suspects contact the

Sheriff's Department, and the failure to properly investigate internet crimes and the suppression and/or

concealment of exculpatory evidence or intentionally ignoring exculpatory evidence.

91.     The unconstitutional customs and practices of the defendants were a direct and legal

cause of harm to plaintiff. Defendant Sheriff Department's custom and/or practices, as described herein,

were within the control of defendant Sheriff's Department and within the feasibility of defendant Sheriff's

Department to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury

complained of herein by plaintiff.

92.     Defendant violated plaintiff's constitutional rights as alleged herein above by among other

things, failing to train as follows: The Sheriff's Department had ample reason to know, based upon

complaints, arrest reports, claims for damages and other reasons that the Sheriff Department's officers

and/or employees regularly engage in the misdeeds set forth throughout this complaint.

93.     The Sheriff's Department was on actual or constructive notice that the Sheriff

Department's training program or regimen was deficient to the degree that caused the unconstitutional

policies, customs and practices described above and caused Sheriff's Department investigators to conduct

themselves in a manner that deprive people of their constitutional rights under the Fourth, Fifth and

Fourteenth amendments to freedom from unreasonable search and seizure, and from malicious

prosecution and from fabricated evidence and or ignored or suppressed exculpatory evidence, yet these

defendants chose in the face of this knowledge to retain the deficient training program.

94.     Thus, the Sheriff Department's policy of inaction to the deficiencies of the training

program constituted decision on the part of the Sheriff's Department to violate the Constitution.

95.     Specifically the Sheriff's Department training program is deficient in its failure to train its

investigators to obtain expertise in social media software and systems necessary to identify computers that connect to social media sites, including chat rooms, to obtain expertise in social media software and systems necessary to identify persons who connect to social media sites, including chat rooms, to identify exculpatory evidence and to report exculpatory evidence to the prosecutors, to investigate multiple suspects, to investigate leads pointing to suspects, to obtain expertise in computer science necessary to a basic understanding of how computers connect to the internet, and to obtain and preserve digital evidence that carries digital fingerprints of and identifies the actual perpetrators of the crimes reported.

96.     The foregoing unconstitutional failures to train were a direct legal cause of harm to plaintiff. Defendants Rodriguez and Bender acted in supervisory capacities with respect to the incidents involving plaintiff as supervisors, defendants Rodriguez, Binder and Neusel acted intentionally, maliciously, in conscious disregard and with deliberate indifference to the rights of plaintiff and others similarly situated and these supervisory failures directly caused and contributed to plaintiff's damages.

97.     Defendant Sheriff Department's and Smith's failures to train, as described herein, are within control of the defendant Sheriff's Department and within the feasibility of the defendant to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by plaintiff.

98.     The actions and inactions of the Sheriff's Department and Smith set forth in the preceding paragraphs were known or should have been known to the policymakers responsible for the Sheriff's Department and occurred with deliberate indifference to either the recurring constitutional violations elaborated here, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training was obvious.

### COUNT 5 – 42 U.S.C. 1983
### DEPRIVATION OF CONSTITUTIONAL RIGHTS – MALICIOUS PROSECUTION AGAINST ALL SCCSD SUPERVISORIAL DEFENDANTS EXCEPT SMITH

99.     Plaintiff re-alleges and incorporates here the foregoing paragraphs as well as any subsequent paragraphs in the complaint as if fully set forth herein.

100.    At the time of the incident set forth in this complaint, the rights of persons within the jurisdiction of the United States of America under both Amendments V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be

free from unreasonable searches and seizures and malicious prosecution and under Amendment VI to a fair trial, were in force and effect and the individual defendant to engaged in conduct, as set forth herein, who met, combined, conferred and formed an agreement amongst themselves to subject plaintiff to malicious prosecution and who subjected plaintiff to malicious prosecution, deprived plaintiff of her constitutional rights, causing her to be incarcerated and subjected to criminal prosecution in case number F1557176, which violated those rights, violated the 14th amendment to the United States Constitution and did conspire to deprive plaintiff of her rights and to cover up the aforesaid constitutional deprivations which proximately caused the severe and permanent injuries to plaintiff, by attempting to fabricate, suppress exculpatory evidence, it ignoring exculpatory evidence in order to obtain an arrest warrant for the illegal arrest of plaintiff in the illegal prosecution of plaintiff by suppressing and/or concealing evidence, by agreeing to maintain a code of silence about the incident and to obfuscate the truth and hinder the discovery of the truth surrounding the illegal arrest of plaintiff and her illegal prosecution and by agreeing to confuse, cloud and falsify facts pertaining to the arrest and prosecution of plaintiff in order to cover up the deprivation of plaintiff's constitutional rights. The conspiracy was furthered by toleration of the code of silence whereby one or more conspirators purports not to have perceived what occurred to plaintiff or statements and admissions detrimental to defendants or misrepresents the occurrence to favor an accused law enforcement officer.

### Count 6 – 42 U.S.C. § 1983
### Deprivation of Constitutional Rights – Malicious Prosecution
### All SCCSD Supervisorial Defendants Including Smith

101.     Plaintiff re-alleges and incorporates here the foregoing paragraphs as well as any subsequent paragraphs in the complaint as if fully set forth herein.

102.     At the time of the incident set forth in this complaint, the rights of persons within the jurisdiction of the United States of America under both Amendments V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable searches and seizures and malicious prosecution and under Amendment VI to a fair trial, were in force and effect and the individual defendant to engaged in conduct, as set forth herein, who seized and subjected plaintiff to illegal seizure, deprived plaintiff of her constitutional rights, which violated those rights, violated the 14th amendment to the United States Constitution and did conspire to

deprive plaintiff of her rights and to cover-up the aforesaid constitutional deprivations which proximately caused the severe and permanent injuries to plaintiff, by attempting to fabricate, suppress exculpatory evidence, ignoring exculpatory evidence in order to obtain an arrest warrant for the illegal arrest of plaintiff in the illegal prosecution of plaintiff by suppressing and/or concealing evidence, by agreeing to maintain a code of silence about the incident and to obfuscate the truth and hinder the discovery of the truth surrounding the illegal arrest of plaintiff and her illegal prosecution and by agreeing to confuse, cloud and falsify facts pertaining to the arrest and prosecution of plaintiff in order to cover up the deprivation of plaintiff's constitutional rights.

### Count 7 – 42 U.S.C. § 1983
### Malicious Prosecution – *Monell* Liability
### SCCSD

103.     Plaintiff re-alleges and incorporates here the foregoing paragraphs as well as any subsequent paragraphs in the complaint as if fully set forth herein.

104.     At the time of the incidents described herein, the rights of persons in the jurisdiction of the United States of America under both Amendments V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable searches and seizures were in force and effect and the individual defendants who engaged in conduct, as set forth herein, who seized and subjected plaintiff illegally, deprived plaintiff of her constitutional rights, which violated those rights, violated the Fourteenth Amendment to the United States Constitution.

105.     Defendant Alanis was assigned to investigate Victim's case of being swindled in an online scam. During the investigation, Alanis determined that Cris received Victim's check and cashed the check at a bank in Texas. Alanis did not investigate the reason Cris received and cashed the checks. Alanis did not investigate an important element of theft—intent. Under California Penal Code §§ 484 and 487(a), proving intent to permanently deprive a person of property is an element in the crime of larceny or theft. Alanis did not speak to Cris. Alanis did not send a letter or email message to Cris. Alanis did not contact friends on Cris' Facebook page in an attempt to speak with Cris. Alanis did not contact local authorities in Texas, such as the Fort Worth Police Department, the Tarrant County Sheriff's Department or the Texas Rangers for assistance in locating Cris or to speak with Cris about the checks. After Cris was arrested and

1  in jail for three months, defendant Alanis made no attempt to question Cris about the checks.

2  Furthermore, Alanis made no further attempt to locate the "unknown male suspect" he knows was

3  involved in the crime. Based on Alanis' failure to properly investigate the case, Alanis had no probable

4  cause to arrest Cris because he had no evidence of Cris' intent nor did he even look for evidence of Cris'

5  intent. Despite not having evidence of criminal intent, and even though Cris sent her fingerprints, State of

6  Texas identification card and her contact information to defendant Sheriff's Department and requested to

7  speak with detectives, Alanis requested an arrest warrant for Cris' arrest, in violation of Cris' Fourth

8  Amendment clearly established right to be free from arrest without probable cause. Based on these facts,

9  no reasonably competent officer would have concluded that a warrant should issue.

10

11

### Count 8 – 42 U.S.C. § 1983, False Arrest/Imprisonment All Individual Defendants

12        106.    The constitutional abuse and violation by defendant Sheriff's Department through the

13  actions of its employees and defendants Alanis and Rodriguez and others were and are proximately caused

14  by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by

15  defendant Sheriff's Department, including the failure to (a) adequately supervise and train its officers and

16  agents, including the defendants, especially in regards to online criminal investigations and intra-

17  department communications; (b) to properly and adequately monitor and discipline its staff, including

18  defendants and public response personnel who take calls and receive documents from those with

19  outstanding warrants and the failure to communicate that information to the investigating deputies; and

20  (c) failure to adequately investigate citizen contacts and information when provided by a citizen targeted

21  by a search warrant requested by defendant Sheriff's Department. Upon information and belief, plaintiff

22  alleges that defendant Rodriguez supervised, assisted and approved of defendant Alanis' investigation and

23  request for an arrest warrant despite the fact there was no evidence Cris had any criminal intent to steal

24  and even though Cris sent her fingerprints, State of Texas identification card and her contact information

25  to defendant Sheriff's Department and requested to speak with detectives. According to Alanis'

26  investigation report, defendant Rodriguez reviewed the report and concurred with Alanis' request for an

27  arrest warrant. Defendant Rodriguez participated in this faulty investigation and knew of the

28  investigation's evidentiary deficiencies but failed to act to prevent Cris' arrest in violation of Cris' Fourth

Amendment clearly established right to be free from arrest without probable cause. Based on these facts, no reasonably competent officer would have concluded that a warrant should issue.

107.    The acts of these individual defendants, under color of state law, caused Cris to be arrested without probable cause that she committed a crime, and caused her emotional distress, suffering, humiliation, embarrassment and pain and suffering in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

108.    The acts of defendant Sheriff's Department caused Cris to be arrested without probable cause that she committed a crime, and caused her emotional distress, suffering, humiliation, embarrassment and pain and suffering in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## DEMAND FOR JURY TRIAL

109.    Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## DAMAGES

110.    As a direct and proximate result of defendants' actions, plaintiff suffered the following injuries and damages:

    a.    Mental anguish in the past and future;

    b.    Lost earnings in the past and future;

    c.    Physical pain and suffering;

## ATTORNEY'S FEES AND COSTS

111.    Plaintiff is entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988(b).

## PRAYER

112.    For these reasons, plaintiff asks for judgment against defendants for the following:

    a.    Actual damages in an amount to be determined at trial.

    b.    Punitive damages against individual damages in an amount to be determined at trial.

    c.    Prejudgment and postjudgment interest.

    d.    Costs of suit.

    e.    All other relief the Court deems appropriate.

1

2   Dated:   March 10, 2017                LAW OFFICE OF M. GREG MULLANAX

3

4                                   By:   /s/ M. Greg Mullanax

5                                         M. Greg Mullanax
                                          Attorney for Plaintiff,
6                                         Cristela Maxson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28